Good morning, your honors. May it please the court. Rohit Rajan IV on behalf of James Burns. I would like to reserve five minutes for rebuttal and I will watch the clock. The constitution safeguards the defendant's right to present a complete defense. This protection is at its highest when a defendant seeks to develop evidence implicating a third-party suspect. The district court thrice prevented Mr. Burns from exercising this right, first in excluding exculpatory evidence, second in refusing a subpoena, and third in denying the continuance. Each error requires this court to reverse and remand. First, the district court erroneously excluded exculpatory evidence. A little more than a month before trial, Snapchat disclosed hundreds of pages of IP addresses revealing that the perpetrator's Snapchat account had been accessed while Burns was in pretrial custody. This production was accompanied by a certificate of authenticity attesting to the data's accuracy. But later, very shortly before trial, the government contacted Snapchat independently for this material. Snapchat then purportedly discovered a technical issue regarding this original data without providing much more. Counsel, why didn't Burns decide to call and question Snapchat's custodian here? I mean, what was that decision about and how can we conclude abusive discretion when there was no, there was an opportunity for that examination that didn't occur? So that, him calling the custodian is not required under the rules of evidence, so I'd point to rules 901 and 902 themselves that say that self-authenticating evidence, evidence like this one that's accompanied by a certificate of authenticity, requires no extrinsic evidence in order to be admitted. But you're arguing that there was a denial of defense by the exclusion of this evidence, but you had an opportunity to cross-examine the custodian of records over this supposed error in the first production to the second. So why is there a defense being denied if an opportunity was there but not taken? Because that sort of calling of the custodian of records improperly allocated the burdens between the party. If the government wanted to question the accuracy of this evidence in the first place, it had the obligation to call the custodian of records. I'm having trouble with that. I'm looking at ER 938. The court says, given Snapchat's amended response to the subpoena and explaining that the material that was responsive to the subpoena that were produced to the court on January 5th were produced in error, I'm not going to allow the introduction of that material. So you're saying that the district court could not exercise any discretion in doing that, notwithstanding your decision not to examine the custodian? No, it could not, because it misunderstood the authenticity inquiry. So I want to make two points on this. First, this court's decision in United States v. Alvarez says that self-authenticating evidence requires no extrinsic evidence in order to be admitted. But second, I do think, contrary to the government's representation otherwise, this does implicate the authenticity inquiry. So authentication asks if a document is what it purports to be. And here, the document purported that we received originally from Snapchat purported to be a true and accurate copy of the data associated with the perpetrator's Snapchat account. That's in the record in this case. From then, it determines which burden then it falls on the party. So the authentication inquiry itself has two parts to it. First, a modest role for the district court in deciding whether the prima facie case for authenticity has been made. And here, we satisfied this because all the parties agree in this case that the certificate satisfied the requirement for self-authentication under Rule 902 Sub 11. It attested from Snapchat that the record was regularly made, kept as part of Snapchat's business, and recorded automatically. That's all that's necessary to satisfy the self-authentication rules. So if you have a hypothetical where you have, for example, a Snapchat-like company or any business record-type company where they give the certificate that you're talking about, and then they come back and say, you know, we certified that this was the response in case A to subpoena 1, but it's a mistake, it really was in case B across the country in a completely different case, that that is not enough to require the proponent to do anything else even in that hypothetical? No, and I want to provide three reasons for why that's not the case. So first, I think those complaints about accuracy of the evidence go to the jury's role in the authentication inquiry. So the jury is the one that ultimately accords weight to the evidence and ultimately determines whether the evidence is in fact authentic. Even in the equivalent of what used to be called a scrivener's error? I think so, because it's a reason for why the company needs to be careful in admitting or providing a party with a certificate of authenticity. So I want to point this court to two cases that we cite in our brief. First is United States versus Caterpillar, and second is United States versus Tank. Importantly in United States versus Caterpillar, this court, when dealing with electronic evidence like computer printouts, says that any question as to the accuracy of the printouts, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printout, not their admissibility. The second point I wanted to make was more of a practical point. So in cases where the explanation for the evidence is obvious, where it's quite clear that the defendant has incorrect data, there's no reason for the defendant to try to introduce that evidence because it hurt the defendant's credibility with the jury when they try to offer evidence and then the prosecutor comes up with a very satisfying explanation for why that evidence is inaccurate or incorrect in the first place. And my third response would simply be that in this case we don't have what is characterized as an obvious error here. Snapchat provided virtually no explanation for why the original production was inaccurate. It simply said it was errant data. But that's why it begs the question, why not call the custodian as a witness to get into why it was an error in the first place? So I think that goes back to the point I made about burden allocation. So I think then the burden is with the government if they were want to be the ones to establish the error because they're putting forth the proposition that this data is erroneous. Because we have the self-authenticated certificate, we have satisfied all that we need to do for admissibility. So to the extent the government wants to make weight objections as to the accuracy of the information, the burden is on the government to introduce that evidence. And I think this court made that clear in both of the cases that I cited earlier where the parties can make those sorts of arguments. But here I think we also had good reason for thinking that information was accurate. Corroborated statements that Mr. Burns made years prior to the production that a suspect in Norway was the one who was responsible for these exploitation offenses, not Mr. Burns himself. So I think in these circumstances, the district court erroneously excluded the evidence rather than letting the parties decide, rather than letting the parties argue whether the evidence was accurate. So you were going to talk about the subpoena itself as another reason for the denial of defense? So the other reasons were, yes, refusal of the subpoena and refusal of the continuance. So mere four weeks before trial, the government provided a new statement from one of the witnesses that had been re-victimized while Mr. Burns was in pretrial custody. And Burns quickly moved to gather information related to this re-victimization. So he first moved for a subpoena to gather the victim's devices to investigate for evidence of this third party and also to continue the trial date to explore other avenues for investigation. And the district court, I think, first erred in refusing the subpoena because the requirements for a subpoena are quite modest. You only need relevancy, admissibility, and specificity. So what was the relevance? So this person was re-victimized in 2023. What connection could that have with the Norway theory? So it was connected to the Norway theory because the new perpetrator used a significantly similar MO in exploiting the victim that the original offense of perpetration occurred. So first, the perpetrator had sent the victim a snippet from one of the original videos that the victim produced. Second, this new perpetrator had them reproduce significantly similar videos to what they produced originally. But what does that have to do with someone in Norway, I guess? We're reviewing this for abuse of discretion and the district court found this to be a fishing expedition of a kind and not limited and specific enough. So why is that an abuse? So first, I would push back on the notion that it just has to be limited to Norway. This court in its third party defense cases says that any evidence that tends to have an inclination of implicating somebody else would be relevant. And I think even if you're honed in on the Norway theory, the declaration or the affidavit that was provided by the expert in connection with one of the subpoena motions says that you can recover even deleted data from the minors devices and then be able to corroborate that with other information that we already had in discovery to potentially figure out who this Norway individual actually is. So I think there we satisfy the relevancy inquiry because it's simply the overlap between the MO and what the expert proffered is enough. And I also want to make clear by pointing this court to the United States versus McKee, which is one of the cases that the government cites in its brief and it deals with the circumstance where the party does not have access to the information or does not have access to what evidence it would necessarily be able to put forth. And this court said in those circumstances, a less specific, a less the reliability or the relevancy threshold and the specificity thresholds are lessened because you don't know what will be revealed at that point. And I think that's the error that we have with respect to the subpoena in this case. Now, we want to briefly talk about the error with the continuance issue with respect to the district court analysis of the four Flint factors. So the parties agree that the first factor is at least neutral, if not tips in favor of Mr. Burns. But I think then for the remaining three factors, the district court error. So first, with respect to whether the continuance met defense needs, I think here we provided reasons for why would have allowed us to narrow both the subpoena request, provide a more detailed affidavit to the district court to satisfy the district court's concerns, or explore other avenues for investigation. Because we know from the minor's affidavit that the perpetrator gave her an Omega NZ account, so we could have tried to subpoena for that sort of account information in this case. I also think in terms of inconvenience, the case had already been pending for a few years, and the parties had already agreed upon continuances between both sides. So that's reason why the burden it would have had on the victims or on the government or on the court was minimal. But I mean, I think, as I understand it, there were some of the minor witnesses were scheduled to testify at a certain time. And so it really, I mean, I think the government's point is it was prejudicial to the witnesses as well for having to extend this out even further. I think that's correct, Your Honor, and that certainly is cognizable under the third factor, but it is not enough to outweigh the relevancy to the defense, especially when, since the outset's been a third-party defense that's been alleged in this case. So even if there was that minor inconvenience, it could have been put, the trial would have only been pushed back a couple of months, it could have re-accommodated people's schedules, and it would have allowed for a more thorough investigation related to this possible third-party suspect. Unless Your Honors have any other questions, I'd like to reserve the remainder of my time. All right, thank you, Counsel. We'll hear from the government. May it please the Court, Ethan Sachs on behalf of the United States. Mr. Burns was one of the most prolific producers and distributors of child pornography on the dark web. For years, he tormented dozens of young girls by threatening and coercing them into recording sexually explicit and degrading acts. He then took that material, edited it, advertised it online, and shared it across the internet. The jury at Mr. Burns' trial heard and saw overwhelming evidence of all of this and convicted Burns on every count, and this Court should affirm. I'd like to turn to a couple of the issues that my friend has discussed this morning. So I think it's important to recognize at the beginning that, as Your Honor mentioned, all of these questions about Snapchat, the three different categories arising out of questions regarding the records, are all reviewed by this Court for an abuse of discretion. Second, I think it's also important to perhaps reframe the way we've been talking about it this morning, and the way I think it's helpful to look at it is to maybe take it out of the computer context and look like if this was a DNA evidence. If we had DNA evidence returned and then the custodian of that evidence later came to the court and said, we're sorry, we tested the wrong sample, what we sent you originally was erroneous, please disregard it. If the court was then required to introduce that evidence to the jury, we think it would certainly establish some type of confusion among the juror, and I think that's important to focus on because I didn't hear my friend this morning talk at all about the issue of confusion or misleading the jury, and we think that's a central component of what the district court relied upon, and we think that makes sense. Well, I think to be fair, counsel did say that's just a matter that goes to weight, and so I think I would disagree with you that your friend didn't address it, whether that's a compelling or a sufficient reason is different, but I think he did address it. Sure, and I don't mean to say in this, I meant specifically in this context of Rule 403, and I think the question of weight is part of this authenticity question that we really don't dispute, and we think is a bit of a red herring here. I don't think anyone disputes that the evidence is self-authenticating. It had a certificate that we think establishes as much. The cases that the other side cites for, well, then such evidence needs to go to the jury to handle issues of weight, like Caterbran. That's where something like a business record is trying to be introduced to the court, and the party opposing its introduction says, well, oh, it's not reliable. It's the party in that instance that's taking an issue with it and not the custodian, and we think that's a very different scenario from what we have here. And your view also is that it can't strip the court of discretion to deal with it if it is something that we said it was A, and we've discovered it was B. Yes, absolutely, Your Honor, and that's why I began by mentioning the standard of review, and then I think to even add on to that, as some of Your Honor's questions have touched on today, it's not as if the district court just said, I don't want to hear this. Let's move on. It said, I understand your point. I'm giving you the opportunity to question the custodian and to explore this theory if you have it, and I think that's telling, and part of the reason perhaps, I mean, this is just speculation, but maybe it makes good sense for Burns not to want to do that because he doesn't want to know what's going to come out from the custodian certifying, yeah, it is what we said. It was a mistake, and it's totally irrelevant, and in that sense would help destroy his defense. Switching gears now to the, unless Your Honor has questions about that, switching gears to the Rule 17 subpoena question, we agree, I think, in that specificity is really what the district court focused on here, and we agree with Your Honor's observation earlier that, yes, the district court did find this to be a phishing expedition, a hope for a trace. I do think it's important to just step back and realize that for this to further the theory of the defendants in this case, it's only true if you assume the first records from Snapchat were accurate, right? It's, oh, that's what shows this supposed connection to Norway from an IP address, but of course, as we've been discussing, Snapchat said that evidence is totally wrong. So it's not, we don't view this as, oh, this is clear exculpatory evidence. This is evidence that the custodian itself said was wrong. Of course, the other components of the specificity analysis that we, I don't believe, discussed this morning is that MV8, the victim that this pertained to, said that she was messaged by the, on the second occasion in January of 2023 on Instagram only, and Burns's request asked for messages from all, excuse me, from all social media applications. So that's, I think, one aspect for why it's too broad. The second aspect is that it sought all communications dating back a year before MV8 says she was contacted the second time, and there's no basis to think that her phone's communications from a year before would have anything to do with this second scenario. And then the third point is Mr. Burns had already been given a chance to specify his subpoena request. He submitted one, the district court did not, because it was like blanket, the district court denied it. He came back with a second one, and that's the one that's here that was in specific. So it's not as if he had no chance to try to specify this more. Did he have to try to make some more of a connection between the Norway theory and the request for these devices, or to take your friend's argument on the other side, is it okay to just more broadly say, okay, well, one of the victims was re-victimized with a similar method that had been done by Mr. Burns, and so defense is entitled to seek information that might suggest a different person involved in these crimes than Mr. Burns? I think the answer, I think, is yes, but I think it's important, I would like to focus on that. I don't think the record is best read as the victim here saying, oh, it was the same MO. In fact, what the victim said, and this is in our brief, is I don't believe this is the same person who was contacting me before. I don't, and Jen is the name that the person used. I don't believe this is Jen. So in a hypothetical case in which there is really some stronger connection to think that this could lead to the theory, perhaps, but I think in this case we're very far away from that, and so I don't, I do think they needed to have a stronger connection if they wanted to avoid a phishing expedition, which this court has repeatedly said can't, 17c cannot be used for that purpose. So counsel, if I could turn to an issue that's in the briefs, but that your friend didn't raise, and vis-a-vis your expert. So it does seem to me that an expert who is not aware of the error rate for important forensic tools, that that's a pretty significant deficiency, and why would that be something that is, if the answer to that is I'm not familiar, even if somebody can examine that issue on cross-examination, why isn't that more of a problem than the district court found it to be here? Sure, so respectfully, your honor, I don't think it's quite right, and I agree with you on a factual matter, that that testimony was he did not know the specific error rates of these tools. The question was at ER 2547, and are you aware of the I don't mean to fight you on that. All I'm trying to say is I don't think that means he doesn't know anything about how these tools work or could produce errors. I think the record shows that he's aware that these tools could produce errors. He just doesn't know the specific rate at which they may arise. So I think, you know, I think there's lots of tools and materials that we all use that we could be experts in and don't necessarily know the specific error rate at which they arise, but take that as it is. I do think the district court was pretty careful about this, and specifically on ER 2549, in response to this argument from Burns, says something to the effect of, well, yes, but the expert here also testified as to the verification and corroboration he does between these tools. So we think that is the district court taking, so if the district had totally blown past this issue, we think that could have been perhaps an issue, but we don't see that as having happened here. And I think that is aligned with what the rest of the record shows about Detective Harris. He has extensive training and knowledge in these tools and specific certifications in these particular tools that he used. And then, as I mentioned, he, or as the district court referred to, he testified both about how he verifies results generally and how he had done so in this case, specifically through cross-consideration that they were consistent results. And he even went on to say, and when that is a problem in other cases, when those are inconsistent results, I do, as he said, a deeper dive into the hexadecimal data. So I think it suggests that this is someone who takes those error rates, or errors, potential errors, seriously and corroborates the results, and may just not know the specific fact of what the rate is. And as I understand the process, although I'm perhaps not as familiar with the extensive record as I could be, the district court's ruling didn't bar later objections to specific questions. Is that right? I think that's correct. I'm not aware of any that she barred. I haven't, yes, I'm not aware. It's a big record. Correct, that's right. I just want to, along the error point, I just want to point out that the case he really relies on to make his point is Valencia-Lopez. And I think for the reasons that I've been discussing in the morning, that's, this morning, that's a very different case. Importantly, and here, there was voir dire, right? So this is where this came out, is through voir dire. And so in Valencia-Lopez, there wasn't, we think there was a reliability finding from the district court here, as I mentioned to Your Honor, at 2549. And importantly, it's not as if there's specific testimony here that Burns was trying to strike, because that's not reliable. In Valencia-Lopez, which is a case about a... Well, that's, I think, what my prior question went to, that there could still be things that were left open after the general ruling following voir dire, I'm going to qualify him. Absolutely, yes. And then the last point is just Valencia-Lopez. The rest of that record had no reliability to support the specific statement in question from the expert. And here, as I've discussed, I think the record is replete with reasons that Harris's testimony and qualifications were reliable. I'm happy to answer any further questions Your Honors have, but if you don't have any, we'd ask that you'd affirm. Thank you. Thanks. You have some, I'm sorry, did you have a question? Yeah, thank you, counsel. And you have some time left for rebuttal. So I'm going to start with a few points in rebuttal, and then I'll get to the expert. Are we in the right place in the clock? Hold on one second. You know, Wayne, do you know how much time there was left for rebuttal? All right, we'll give you three minutes. So I first want to start with a standard of review. Because this case implicates Mr. Burns' constitutional right to present a complete defense, this court reviews it de novo, and I'd point it to United States versus Stever, which is our best case on this point, which deals with the exclusion of evidence. And there, this court emphasized that it's important that this court cannot decide whether that third-party defense is so fantastical that it's still, the district court has afforded some discretion. Rather, those are determinations that the jury has to make in the first instance. The second point I want to make are about rules 401 and 403 more specifically. The government has not identified a single case where the court can make weight decisions about whether evidence is in fact believable or not. In fact, we've identified the opposite with the cases we've cited in our reply brief, where we say in the eyewitness context, the district court cannot simply say, I believe one eyewitness is much more credible than the other eyewitness. Therefore, I'm going to exclude them on 401 or 403 grounds. We believe that same principle should apply in this context, because Mr. Burns has satisfied the inquiry for self-authentication under Rule 902, and therefore, under the cases we've cited, he was entitled to get that evidence to the jury in the first place. Moving on to the subpoena issue, I don't believe this is a fishing expedition, and I want to quote specific language that this court used in United States versus McKee, which was a bid rigging case. There, it said that where a party has not yet seen the relevant evidence, it would be unreasonable to expect a more detailed connection. And here, we have not even had the opportunity to examine the devices, so we believe the expert affidavit that was supplied with the subpoena was enough, and requiring anything else would have been an unreasonable expectation under this court's case law. Finally, I want to turn to the expert issue that you identified, Judge Bennett. In terms of the error rate discussion, I think you're right that error rates are very important, and that combines with another error that the district court made in this case, which it advocated as gatekeeping responsibility. There was no weighing of some Daubert factors against other Daubert factors. Rather, the district court used the very language that you wrote in Valencia-Lopez is insufficient for the gatekeeping function, that all of these objections go to weight rather than the district court's role. It's important in the Rule 702 context that the district court play a gatekeeping role, and here, the district court completely abdicated that opportunity. I also want to emphasize that there was also no corroboration for the key point of expert testimony about malware. The agent testified that they only used one program to test whether there was malware on Mr. Burns's computer. That was it. So that result was uncorroborated with no error rate in the first place, which means that it was that the expert had to be qualified here because this went to the substance of Mr. Burns's third party defense. So for this reason, we believe that the district court erroneously qualified Detective Harris as an expert witness, and the government has made no argument about harmlessness here, so that error by itself would also require reversal. Unless this court has any other questions, we ask this court to reverse and remand. We thank counsel for their arguments. The case just argued is submitted, and with that, we are adjourned for the day and the week. Thank you, counsel.
judges: BENNETT, SANCHEZ, THOMAS